## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| OTTER PRODUCTS, LLC, and | ) | |
| TREEFROG DEVELOPMENTS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:19-cv-06195 |
| | ) | |
| v. | ) | JUDGE ROWLAND |
| | ) | |
| FELLOWES, INC. | ) | MAGISTRATE JUDGE HARJANI |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |
| | ) | |

## SECOND AMENDED COMPLAINT

Plaintiff Otter Products, LLC ("OtterBox") and TreeFrog Developments Inc. ("TreeFrog

Developments," and collectively with OtterBox, "Plaintiffs"), in view of this Court's order of June

25, 2020 (Dkt. 71)[1], for their Second Amended Complaint against Defendant Fellowes, Inc.

("Fellowes"), state and allege as follows:

## PARTIES

1.      OtterBox is a limited liability company duly organized and existing under the laws

of the State of Colorado, having its principal place of business located at 209 S. Meldrum Street,

Fort Collins, Colorado 80521.  Among other things, OtterBox designs, manufacturers, and markets

---

[11] In conformance with the Court's Order, this Second Amended Complaint amends the allegations of the First Amended Complaint (Dkt. 22) only as to the asserted trade dress claim (Count I), which amendments are additionally incorporated by existing reference into Counts II, III, XII, and XIII.  Specific amendments were made to Paragraphs 19, 20, 25, 29,  31, 57, 64, 67, 71, 72, and 80, and paragraphs 44 and 45 excised (all referring to numbering in the First Amended Complaint, Dkt. 22).  All exhibits from the First Amended Complaint (Dkt. 22) have been refiled herewith, but contain no modifications.

protective cases to protect smart phones and tablet computers in all environments under the OtterBox and LifeProof marks.

2.     TreeFrog Developments is a corporation duly organized and existing under the laws of the State of Delaware, having its principal place of business at 15110 Avenue of Science, San Diego, California 92128. TreeFrog Developments developed the original LifeProof brand protective case products and licensed various intellectual property for related patents, trade dress, trademarks, and other intellectual property to OtterBox.

3.     Fellowes is an Illinois corporation headquartered in Itasca, Illinois with its principal place of business at 1789 Norwood Avenue, Itasca, Illinois 60143.

## JURISDICTION AND VENUE

4.     This action arises under the federal Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, the Patent Act, 35 U.S.C. §§ 1 *et seq.*, and related laws of the State of Illinois.

5.     This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338. Because Plaintiffs and Fellowes are citizens of different states and the amount in controversy exceeds $75,000 exclusive of fees and costs, this Court also has diversity jurisdiction over the parties under 28 U.S.C. § 1332.

6.     This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C § 1367(a), as the state law claims are so closely related to the Plaintiffs' federal claims for unfair competition and trade dress infringement under the Lanham Act that they form part of the same case or controversy and derive from a common nucleus of operative facts.

7.     On information and belief, Defendant's Blackweb Waterproof Phone Case and Blackweb Rugged Phone Case products—which are alleged herein to infringe upon Plaintiffs' trade dress and patent rights, and which further constitute deceptive trade practices under Illinois

law and common law unfair competition in Plaintiffs' related state law claims—were and continue to be used, imported, offered for sale, and/or sold in this District.

8. This Court has personal jurisdiction over Fellowes because Fellowes is incorporated in the State of Illinois, maintains its principal place of business within this District, engages in continuous and systematic business activities in this District, and has committed the acts of trade dress infringement, patent infringement, Illinois statutory deceptive trade practices, and common law unfair competition complained of herein in this District.

9. Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400(b) because Fellowes is deemed to be a resident of this District based on its principal place of business, has a regular and established place of business in this District, and has committed tortious acts in this District as complained of herein.

## GENERAL ALLEGATIONS

10. In 1998, Curtis R. Richardson founded OtterBox out of his garage in Fort Collins, Colorado. In that garage, Mr. Richardson created a novel, first-of-its-kind prototype of a protective case designed to allow users to protect their mobile devices without sacrificing access to the device's controls or the use of the device. The product line became a rapid success in the marketplace, quickly cementing OtterBox's reputation for high-quality protective cases for mobile devices.

11. Since those early days developing protective cases, OtterBox has maintained a reputation as a leading innovator in device protection and interaction. Throughout its product lines, OtterBox incorporates creativity, careful engineering, and cutting-edge design.

3

12. In the years that followed, OtterBox engineered and developed new technologies and designs. These designs included the benchmark DEFENDER Series brand cases with a dual-layer hard shell and cushion layer design, and many others.

13. OtterBox's industry-leading efforts to develop and implement new technologies for these and other protective cases have been recognized through the award of numerous patents. Today, over 150 utility patents are assigned to OtterBox, protecting various aspects and embodiments of its industry-leading protective cases.

14. The OtterBox DEFENDER Series brand cases, for example, embody technology disclosed in at least U.S. Patent No. 9,498,033 and many others. (www.otterbox.com/ip).

15. The DEFENDER Series brand cases have been identified as patented articles, including by marking the protective cases with "Patents: www.otterbox.com/ip" to notify the public that they incorporated patented teachings and technologies.

*Plaintiffs' Development of and Rights in the LIFEPROOF Trade Dress and Patents*

16. In 2009, Gary Rayner invented a protective case to allow users to protect their mobile devices from dirt, snow, water, and physical drops. Mr. Rayner founded TreeFrog Developments and adopted the mark LIFEPROOF to identify and distinguish this product line from other, less protective cases in the market.

17. At least as early as May 27, 2011, TreeFrog Developments began using the LIFEPROOF mark in connection with protective cases, encasements, housings, covers, and carrying cases, most famously for the Apple iPhone and other smart phone devices.

18. From the beginning, TreeFrog Developments conceived of, developed, and adopted a unique overall appearance for its protective cases. In 2011, TreeFrog Developments released a

4

protective case for the Apple iPhone 4S (the LifeProof FRĒ), featuring characteristic "curved side bumpers" that framed the mute toggle and volume buttons:



The curved, mirrored design of the two side bumpers serves to visually link each of the features on the side of the device—e.g., the mute toggle and volume buttons for the Apple iPhone—into a single design element.

19.     In 2013, Plaintiffs OtterBox and TreeFrog Developments agreed to work together to implement, develop, and evolve the overall appearance of LifeProof-branded products.  As part of that relationship, Plaintiff TreeFrog licensed its intellectual property rights in existing product designs and trade dress to OtterBox, but retained legal title to these rights.  In anticipation of Plaintiff OtterBox's planned investment in the LifeProof product lines, Plaintiffs agreed that OtterBox would own any subsequent developments, modifications, and enhancements that it contributed to the LIFEPROOF intangible properties through that collaboration, including to the

LIFEPROOF trademarks, trade dress, and improvements to inventions patented by TreeFrog Development.

20.     In 2014, and within the scope of the Plaintiffs' relationship, OtterBox conceptualized and developed the use of contrast piping—the "color pop band"—and a trapezoidal branding tag on the side of LifeProof brand cases.  These design elements were first incorporated into the overall appearance of the LifeProof FRĒ for the Apple iPhone 6, released in 2014, and have been used repeatedly and consistently in the years that followed for additional protective case offerings.  As set forth below, the asserted LIFEPROOF Trade Dress includes design elements developed and owned by TreeFrog, but licensed to OtterBox (the curved side bumpers) as well as additional design elements incorporated into the LifeProof product line and incorporated into trade dress by OtterBox (the color pop band and trapezoidal branding tag).  Plaintiffs have jointly developed and jointly own the LIFEPROOF Trade Dress.

21.     Today, through the combined efforts of Plaintiffs, LifeProof brand protective cases implement cutting-edge technology to maximize protection while ensuring that users can continue to access the features and controls of their mobile devices.  These efforts to innovate and engineer new protective technologies have resulted in the issuance of over three dozen utility patents.

22.     These innovative teachings are implemented by and featured in products across the LifeProof brand product lines.  The LifeProof FRĒ brand cases, for example, implement technology disclosed by U.S. Patent Nos. 8,342,325; 8,393,466; 8,526,180; 8,564,950; and 9,549,598, amongst others.  (www.lifeproof.com/ip).  The LifeProof FRĒ Power brand cases include teachings from U.S. Patent No. 8,526,180; 8,564,950; and 9,549,598, amongst others.  *Id.* And the innovative LifeProof NÜÜD brand cases, which offered a first-of-its-kind waterproof case

without use of a membrane, include technology from at least U.S. Patent Nos. 8,526,180; 8,531,834; and 8,564,950. *Id.*

23.     Each of these LifeProof brand product lines have been identified as patented articles, including by marking the protective cases with "Patents: www.lifeproof.com/ip", to notify the public that they incorporated patented teachings and technologies.

### The LIFEPROOF Trade Dress

24.     Beginning with the original cases designed by TreeFrog Developments and through the design and development of protective cases for later generations of iPhones and other smart devices, the design and overall appearance of LifeProof brand protective cases is unique, aesthetic and non-functional, and consumers have come to associate these distinctive elements with the LIFEPROOF brand and products.  The resulting overall visual appearance serves as trade dress by serving as an indicator of the source of LifeProof brand products ("LIFEPROOF Trade Dress").

25.     The LIFEPROOF Trade Dress asserted in this Lawsuit is defined by the total image and overall visual impression created by the following features: (1) curved side bumpers framing the mute toggle and volume buttons; (2) the "color[2] pop band" between the top and bottom members of the protective case; and (3) a trapezoidal branding tag on the side(s) of the case.[3]

---

[2] Plaintiffs do not define or claim the use of specific colors, in the abstract, as an element of the LIFEPROOF Trade Dress.  As set forth in detail herein, the "color pop band" and "trapezoidal brand tag" are defined by the size, shape, location, and use of contrasting materials and textures (including through the use of contrasting colors) of the respective elements.

[3] On information and belief based on Plaintiffs' investigation, each and every Blackweb Waterproof Phone Case Product that has been sold by Defendant to date has included these design elements.  Other variations of the LIFEPROOF Trade Dress exist that include additional design elements or exclude same, but consistent with this Court's order and the scope of relevant issues in this case, Plaintiffs do not seek an advisory opinion on such variations.  *See Bodum USA v. A Top*, 16-cv-2916 (N.D.Ill. Aug. 23, 2016) ("The theoretical possibility of a future controversy involving Bodum's trade dress and some other A Top product does not change things. In this regard, A Top is essentially seeking an inappropriate advisory opinion, that is, 'a

7

Reproduced below is an image of an exemplar LifeProof brand product bearing the LIFEPROOF Trade Dress:

*LIFEPROOF Trade Dress*



*LifeProof FRĒ for iPhone 7 and 8 ([www.lifeproof.com](www.lifeproof.com))*
Including (1) curved side bumpers; (2) "color pop band"; and (3)
trapezoidal branding tag.

26. The overall visual impression created by these defined elements is protectable as the LIFEPROOF Trade Dress.

## COUNT I

*Lanham Act Infringement of LIFEPROOF Trade Dress,*
*15 U.S.C. § 1125(a)*

---

decision that does not resolve an actual case or controversy.'" (quoting *People of State of Ill. ex rel. Barra v. Archer Daniels Midland Co.*, 704 F.2d 935, 941 (7th Cir. 1983)).

27.     Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as though fully set forth herein.

28.     As its first claim for relief, Plaintiffs allege trade dress infringement pursuant to 15 U.S.C. § 1125(a), based on Fellowes' unauthorized adoption and use in commerce of the LIFEPROOF Trade Dress in the design of the Blackweb Waterproof Phone Case products.

29.     LifeProof-branded products such as the LifeProof FRĒ brand case have incorporated the LIFEPROOF Trade Dress through the overall visual appearance created by the following features: (1) curved side bumpers flanking the switches and buttons on the side of the device (e.g., the mute toggle and volume buttons of the Apple iPhone); (2) "color pop band" between the top and bottom members of the protective case; and (3) a trapezoidal branding tag.

30.     The Blackweb Waterproof Phone Case products improperly appropriate the overall visual impression of the LIFEPROOF Trade Dress by adopting and using these elements, without authorization, and thereby infringe upon the LIFEPROOF Trade Dress.

31.     As set forth in the exemplary protected elements below, and on information and belief, Fellowes adopted each of the protected elements in order to mimic the overall distinctive visual impression created by the LIFEPROOF Trade Dress in an effort to directly compete with and replace genuine LifeProof-branded products in the marketplace:

9

| Element | LifeProof FRĒ for iPhone 7/8 | Blackweb Waterproof Phone Case for iPhone 7/8 |
|---|---|---|
| Curved Side Bumpers |  |  |
| "Color Pop Band" (orange annotation) & Trapezoidal Brand Tagging (green annotation) |  |  |

32.     As set forth in detail below, the LIFEPROOF Trade Dress is non-functional, has acquired secondary meaning, and there is a likelihood of confusion between the LIFEPROOF Trade Dress and the Blackweb Waterproof Phone Case products.

### The LifeProof Trade Dress is Non-Functional

33.     The design of each of the defined elements is non-functional and instead contributes to and creates the unique and distinguishable overall visual impression of the LIFEPROOF Trade Dress.

### The Curved Side Bumpers

34.     First, the abundance of available phone case products that either use different designs for side bumpers or exclude them altogether demonstrates that the size, shape, location, and curved design of the side bumpers of the LIFEPROOF Trade Dress is not essential to any protective qualities, or other functionality, provided by the product's design or to competition in the protective phone case market.   A non-exhaustive sampling of such alternative (and null) designs are included below:

| Product | Detail |
|---|---|
| LifeProof FRĒ for iPhone 7/8 |  |
| Blackweb Waterproof Phone Case for iPhone 7/8 |  |

11



| Product | Detail |
|---|---|
| Tech21 Evo Aqua 360° Edition for iPhone 7 | *Source:* www.youtube.com/ (Tech21 Official Channel) |
| Punk Case iPhone 7 Studstar Series | *Source*: www.punkcase.com |
| Catalyst Impact Protection Case for iPhone 7/8 | *Source*: www.catalystcase.com |
| Ghostek NAUTICAL2 for iPhone 7 | *Source*: www.ghostek.com |

35.     The particular design, and in particular the size, shape, and location of the curved side bumpers of the LIFEPROOF Trade Dress, serves no functional purpose.  Instead, the aesthetic design of the curved side bumpers serve to visually link the switches and buttons on the side of the device (e.g., the mute toggle and volume switches of the Apple iPhone) into a single design element.  Any protective qualities provided by the bumpers are not provided by the design of the element, and could be equally accomplished by moving the bumpers, or adopting a shape or size

distinct from the non-functional and ornamental design implemented in the LIFEPROOF Trade Dress.

*The "Color Pop Band"*

36.    Second, the independently molded and separately colorable "color pop band" employed in the LIFEPROOF Trade Dress between the top and bottom members of the protective case is solely aesthetic and serves no utilitarian function:

| Product | Side Profile |
|---|---|
| LifeProof FRĒ for iPhone 7/8 |  |

37.    Indeed, the "color pop band" consists of the same physical material as the underlying frame of the top and bottom members of the LifeProof brand protective cases, and therefore does not provide additional protective qualities (including, e.g., acting as a seal).  For example, eliminating the "color pop band" by extending the surrounding overmolded plastic, or by using material of the same color and texture as the surrounding plastics, would not impact the protective qualities of the case.

38.    Further, the introduction of a second color to the injection molding process introduces added complexity and increases the cost of manufacture without affording additional utility, leaving the election to include the "color pop band" solely an aesthetic consideration unrelated to decreasing the cost or reducing complexity of manufacture.

39.    Instead, the size, shape, and location of, and use of contrasting material for the "color pop band" are aesthetic considerations and unrelated to the product's functionality or marketplace competitiveness.

*The Trapezoidal Branding Tag*

40.     Third, the use of a trapezoidal branding tag employed in the LIFEPROOF Trade

Dress is an aesthetic consideration which provides no added functionality or utility:

| Product | Side Profile |
|---|---|
| LifeProof FRĒ for iPhone 7/8 |  |

41.     The inclusion of branding text does not make the size, shape, use of contrasting

materials, and location of the underlying trapezoidal branding tag functional.  Moreover, because

the branding text (e.g., "LIFEPROOF") is embossed into the material of the trapezoidal branding

tag, the lettering can be nearly or entirely illegible to an observer any more than a few feet away

—*e.g.*, a potential consumer who sees the case in use by another patron of a coffee shop or on the

street:

*LifeProof FRE for iPhone X and Blackweb Waterproof Phone Case for iPhone X*

42.     As with the manufacturing process for the "color pop band," introduction of the

trapezoidal branding tag in a contrast shade or hue on the side of products using the LIFEPROOF

Trade Dress increases cost and complexity of manufacture without providing any additional

protective qualities or competitive advantage in the market.

43.     Instead, the size, shape, and location of, and use of contrasting material for the

trapezoidal branding tag are aesthetic considerations and unrelated to the product's functionality.

### *The LIFEPROOF Trade Dress Has Acquired Secondary Meaning*

44.     By virtue of Plaintiffs' hard work and investments, including through their respective contributions to the development of the unique overall image of LifeProof brand products and significant efforts marketing and advertising LifeProof's protective case products, the LIFEPROOF Trade Dress has acquired a secondary meaning, serving to visually identify authentic LifeProof brand products instantly and to distinguish LifeProof brand products in the marketplace for consumers.

45.     LifeProof-branded products sold by Plaintiff OtterBox use the distinctive LIFEPROOF Trade Dress in commerce to visually identify LifeProof-branded products and distinguish LifeProof brand products in the marketplace for consumers.

46.     In turn, the elements contributing to the overall visual appearance of the LIFEPROOF Trade Dress allow customers to associate products as originating with Plaintiffs, crediting the quality, reputation, and goodwill of the LifeProof brand and avoiding confusion with other brands.

47.     LifeProof-branded products have received numerous industry awards and recognitions from organizations and publications such as PCMag, Parent Tested Parent Approved, and Field & Stream.  The LIFEPROOF brand has the second-highest aided advertising awareness of all major providers of protective cases for personal mobile devices, tied with Apple and second only to OtterBox itself.

48.     The LIFEPROOF Trade Dress is the fruit of a years-long, multi-million-dollar advertising campaign and market presence.  Through the course of these sales and their relationship, Plaintiffs have invested significant resources in marketing, promoting, and advertising LifeProof brand products.  Since 2014, OtterBox has spent over $50 million on

advertising, including prominent imagery of protective cases featuring the LIFEPROOF Trade Dress. OtterBox has also appeared at trade shows and hosting booths, again prominently featuring imagery of the LIFEPROOF Trade Dress. OtterBox has also expanded and increased brand awareness by sponsoring events such as Red Bull Cliff Diving, World Surf League, and the X Games.

49. Driven by Plaintiffs' promotional efforts and the brand recognition enabled by the LIFEPROOF Trade Dress, LifeProof brand products have been the subject of over 2,500 unique media stories, both online and in print. Among others, these have included media stories on:

- Buzzfeed
- Outside
- TechCrunch
- 9to5 Mac
- Golf Digest
- Fatherly
- Trend Hunter
- Wall Street Journal
- Popular Science
- Health
- Business Insider
- Runner's World
- Gear Patrol
- USA Today
- Tom's Guide
- Forbes
- GQ
- Afar
- SELF

50. Based on unique visitor information for each website, media mentioning LifeProof's products have been viewed more than 5.25 billion times.

51. These efforts to build awareness of and familiarity with the LIFEPROOF Trade Dress, combined with Plaintiffs' reputation for engineering and manufacturing the most protective, highest quality cases on the market, have enabled Plaintiffs to sell millions of LifeProof-branded protective cases.

52. Since 2011, Plaintiffs have sold more than 50 million LifeProof-branded cases in the United States, generating over $1.8 billion in sales.

16

53.     The LIFEPROOF Trade Dress, through Plaintiffs' distinctive design efforts, careful cultivation of goodwill, and hard-earned reputation for high quality, has acquired additional distinctiveness and secondary meaning in the marketplace.

### The Blackweb Waterproof Phone Case Products Create a Likelihood of Consumer Confusion and Actual Confusion

54.     On information and belief, Fellowes designs, manufactures, uses, imports, offers for sale, and sells for distribution through Walmart's online and brick-and-mortar stores nationwide, the Blackweb Waterproof Phone Case products.

55.     Fellowes offers Blackweb Waterproof Phone Case products for at least the Apple iPhone 7/8, the iPhone 7+/8+, the iPhone XR, iPhone Xs, and the iPhone Xs Max (collectively, the "Blackweb Waterproof Phone Case products" or the "Blackweb Waterproof Phone Case for Apple iPhone products").

56.     For example, although the external packaging of the Blackweb Waterproof Phone Case for the iPhone 7/8 assigns ownership of the "BLACKWEB" mark to Walmart, Inc. and purports that the product is "Distributed by Walmart Inc.," the internal brochure informs that Defendant "Fellowes warrants products to be free from defects in manufacturing" and instructs consumers to contact Fellowes directly for customer support and warranty questions.

57.     On information and belief, Fellowes intentionally and willfully set out to benefit from the Plaintiffs' years of investment and labor in the LifeProof brand product lines by intentionally copying the LifeProof brand cases in nearly every respect, including at least the LIFEPROOF Trade Dress elements discussed above as well as Plaintiffs' technologies protected by numerous patents assigned to OtterBox and TreeFrog Developments.

58.     On information and belief, Fellowes copied the LIFEPROOF Trade Dress in order to confuse consumers as to the true origin of the products and thereby to improperly benefit from

17

Plaintiffs' hard-earned market presence and reputation for engineering and manufacturing the most protective, highest-quality cases on the market.

59.     Fellowes' continued sale of the Blackweb Waterproof Phone Case products using the LIFEPROOF Trade Dress is likely to cause consumers to confuse the Blackweb Waterproof Phone Case products as a LifeProof brand product sold by Plaintiffs, permitting Fellowes to unjustly benefit from Plaintiffs' efforts to establish the LIFEPROOF Trade Dress in the public consciousness.

60.     That is, because of Fellowes' improper and unauthorized use of the LIFEPROOF Trade Dress, consumers are likely to mistakenly believe that the Blackweb Waterproof Phone Case products are manufactured by, authorized by, or otherwise affiliated in some way with Plaintiffs and their combined history of designing and making protective cases of the highest quality.

61.     Fellowes' use of the LIFEPROOF Trade Dress is especially likely to confuse consumers as the infringing Blackweb Waterproof Phone Case products are currently sold not only through the same trade channels, but also physically alongside and in-between Plaintiffs' marquee products in Walmart stores:



62.     Further, the protectable design elements describing the overall visual appearance of the LIFEPROOF Trade Dress are featured prominently on the packaging for the Blackweb Waterproof Phone Case products.   For example, the images of the accused product on the packaging for the Blackweb Waterproof Phone Case for the iPhone 7+/8+ feature all three elements defined at Paragraphs 25 above:[4]

---

[4]  Defined elements of LIFEPROOF Trade Dress annotated as follows:

| *Defined Element* | *Annotation* |
|---|---|
| Curved Side Bumpers | Blue |
| "Color Pop Band" | Orange |
| Trapezoidal Branding Tag | Green |

| Package Front |  |
| Package Sleeve |  |

| Package Back |  |

63.     The unauthorized Blackweb Waterproof Phone Case products are also available through Walmart's website, at www.walmart.com, where they are sold alongside LifeProof brand products authorized to use the LIFEPROOF Trade Dress:



*Source:* Walmart.com

64.     On information and belief, Fellowes designs, manufactures, markets, and sells in commerce in this District—and by virtue of its distribution relationship with Walmart, throughout the United States—the Blackweb Waterproof Phone Case products to directly compete with LifeProof brand products.

65.     Fellowes has adopted the overall visual impression created by the defined elements of the LIFEPROOF Trade Dress without authorization to create a product so aesthetically and visually similar to Plaintiffs' LifeProof brand products as to create a likelihood of consumer confusion, e.g.:[5]



| *LifeProof FRĒ brand products* | *Blackweb Waterproof Phone Case products* |
|---|---|
| *LifeProof FRĒ for iPhone 7/8* | *Blackweb Waterproof Phone Case for iPhone 7/8* |

---

[5] All images of LifeProof FRE brand products from www.lifeproof.com.  Defined elements of LIFEPROOF Trade Dress annotated as follows:

| *Defined Element* | *Annotation* |
|---|---|
| Curved Side Bumpers | Blue |
| "Color Pop Band" | Orange |
| Trapezoidal Branding Tag | Green |



| | |
|---|---|
| *LifeProof FRĒ for iPhone 7/8 Plus* | *Blackweb Waterproof Phone Case for iPhone 7/8 Plus* |



| | |
|---|---|
| *LifeProof FRĒ for iPhone XR* | *Blackweb Waterproof Phone Case for iPhone XR* |

23



| LifeProof FRĒ for iPhone Xs | Blackweb Waterproof Phone Case for iPhone Xs |



| LifeProof FRĒ for iPhone Xs Max | Blackweb Waterproof Phone Case for iPhone Xs Max |

66.     On information and belief, Fellowes adopted the overall appearance of the LIFEPROOF Trade Dress without authorization with the intention of creating a product with an overall visual impression so aesthetically similar to Plaintiffs' LifeProof brand products that consumers will mistakenly believe the Blackweb Waterproof Phone Case products are related to, affiliated, or otherwise authorized by Plaintiffs:

24



| *LifeProof FRĒ*<br>*(iPhone 7/8)[6]* | *Blackweb Waterproof Phone Case*<br>*(iPhone 7/8)[7]* |
|---|---|
| *LifeProof FRĒ*<br>*(iPhone XR)[6]* | *Blackweb Waterproof Phone Case*<br>*(iPhone XR)[7]* |

67. In so doing, on information and belief, Fellowes intends that consumers will mistakenly purchase the Blackweb Waterproof Phone Case products in order to improperly benefit through higher sales, to the detriment of Plaintiffs' own sales.

---

[6] www.lifeproof.com

[7] www.walmart.com

68.     Further, through the conduct alleged herein, Fellowes has caused actual consumer confusion.

69.     For example, a user posted on a forum of the website Reddit.com that they had purchased a "blackweb lifeproof case":



(yellow highlight added)

70.     In another case, a user posted a Blackweb Waterproof Phone Case on the website OfferUp.com, listing the product as the "Blackweb LifeProof Case":



(yellow highlighting added)

71.     In these and, on information and belief, other cases, consumers have been confused by Fellowes' use of the LIFEPROOF Trade Dress and mistakenly believed the Blackweb Waterproof Phone Case products are related to, affiliated, or otherwise authorized by Plaintiffs.

72.     Though Fellowes' ongoing and unauthorized use, Fellowes infringes the LIFEPROOF Trade Dress and unfairly competes with Plaintiffs in the marketplace.

73.     The marketing, offer for sale, and sale of the Blackweb Waterproof Phone Case products are likely to cause and actually cause confusion, mistake, or otherwise deceive the relevant public, including consumers shopping at Walmart's physical and online locations nationwide.

74.     Fellowes' actions irreparably harm the value of Plaintiffs' LIFEPROOF Trade Dress, and further cause irreparable injury to Plaintiffs' invaluable reputation and goodwill as market leaders in the protective case market.

75.     As demonstrated through the wholesale mimicry of Plaintiffs' LifeProof brand protective cases, Fellowes created, adopted, and used in commerce the design of the Blackweb Waterproof Phone Case products with full knowledge of Plaintiffs' rights in the LIFEPROOF Trade Dress.

76.     Further, the mimicry of the overall visual impression created by the defined elements of the LIFEPROOF Trade Dress, on product-by-product basis, demonstrates that Fellowes undertook a concerted effort to copy each LifeProof brand product released by Plaintiffs.

77.     On information and belief, Defendant undertook an intentional, individualized effort to directly copy, as closely as possible, each variant of the LifeProof FRĒ brand cases released by Plaintiffs when developing the corresponding Blackweb Waterproof Phone Cases.

78. For example, if aesthetic design elements were not included in a LifeProof FRĒ brand product for a particular smart phone, Defendant did not include it in the corresponding Blackweb Waterproof Phone Case product for that same smartphone.

79. Consequently, Fellowes' efforts to sell and its sales of the Blackweb Waterproof Phone Case products have been and continue to be in bad faith and with a willful and deliberate intent to pass off these products as those of Plaintiffs, in order to trade on the goodwill carefully cultivated and developed by Plaintiffs since the release of the first products in 2011 and over the course of their relationship.

80. Fellowes' historical and ongoing willful and deliberate conduct makes this an exceptional case within the meaning of 15 U.S.C. § 1117(a). Plaintiffs are entitled to the recovery of their actual and enhanced damages or the disgorgement of Fellowes' profits, of Plaintiffs' attorneys' fees, and of the costs of this litigation.

81. Unless the Court intervenes and restrains further misconduct and unfair competition, Fellowes will continue its efforts to confuse and mislead consumers in the marketplace, and to improperly draw upon Plaintiffs' good reputation and customer goodwill.

82. Unchecked, Fellowes' infringing activities have injured Plaintiffs, and unjustly enriched Fellowes, which activities will continue to cause substantial and irreparable injuries and damage to the public and to Plaintiffs. Plaintiffs have no remedy at law adequate to fully compensate the injury and damages caused by Fellowes' ongoing trade dress infringement.

## COUNT II

*Federal Unfair Competition, 15 U.S.C. § 1125(a)*

83. Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as though fully set forth herein.

84.     The acts of Fellowes complained of herein constitutes federal unfair competition and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a).

85.     Fellowes' activities are likely to cause confusion, mistake, or deception among consumers, purchasers, and users of the parties' goods as to the source or origin, and as to the approval or sponsorship of, affiliation between, or endorsement by Plaintiff's and Fellowes, in violation of 15 U.S.C. § 1125(a).

86.     By virtue of its distribution relationship with Walmart, Fellowes' Blackweb Waterproof Phone Case product is in interstate commerce, including at least availability for sale through Walmart's physical and online stores.

87.     Plaintiffs have suffered and continue to suffer damages resulting from Fellowes' improper conduct, including, without limitation, through the loss of sales Plaintiffs would have made but for Fellowes' actions in an amount to be proven at trial, and through the loss of goodwill, injury to reputation, and loss of exclusivity in Plaintiffs' LIFEPROOF Trade Dress rights.

88.     As the direct and, on information and belief, intended result of Fellowes' conduct, Fellowes has been unjustly enriched through the sales of Blackweb Waterproof Phone Case products.  Fellowes should be ordered to disgorge any and all profits earned as a result of its unlawful conduct.

89.     Unless the Court intervenes and restrains further misconduct and unfair competition, Fellowes will continue its efforts to confuse and mislead consumers in the marketplace, and to improperly draw upon Plaintiffs' good reputation and customer goodwill.

90.     Unchecked, Fellowes' infringing activities have injured Plaintiffs, and unjustly enriched Fellowes, which activities will continue to cause substantial and irreparable injuries and

damage to the public and to Plaintiffs. Plaintiffs have no remedy at law adequate to fully compensate the injury and damages caused by Fellowes' ongoing trade dress infringement.

91.     Fellowes' historical and ongoing willful and deliberate conduct makes this an exceptional case within the meaning of 15 U.S.C. § 1117(a). Plaintiffs are entitled to the recovery of their actual and enhanced damages or the disgorgement of Fellowes' profits, of Plaintiffs' attorneys' fees, and of the costs of this litigation.

## COUNT III

*Dilution of the LIFEPROOF Trade Dress,*
*15 U.S.C. § 1125(c)*

92.     Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as though fully set forth herein.

93.     As set forth in detail, above, the LIFEPROOF Trade Dress is distinctive, well-known and famous, and serves to instantly and visually identify Plaintiffs' LifeProof brand products to consumers in the marketplace.

94.     Defendant Fellowes is using the LIFEPROOF Trade Dress in the market without authorization.

95.     Fellowes' use of protected design elements and the LIFEPROOF Trade Dress began after Plaintiffs' conception, development, and application of the LIFEPROOF Trade Dress for its LifeProof brand products.

96.     Indeed, and on information and belief, Fellowes intentionally set out to copy Plaintiffs' LIFEPROOF Trade Dress across various products.

97.     Fellowes' unauthorized actions are likely to weaken, and on information and belief have weakened, the ability of the LIFEPROOF Trade Dress to clearly distinguish the source of LifeProof brand products in the marketplace.

98.     Fellowes' historical and ongoing willful and deliberate conduct makes this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

99.     Fellowes' actions have irreparably harmed Plaintiffs, including through damage to Plaintiff's goodwill, reputation, and business, and the value of Plaintiffs' LIFEPROOF Trade Dress.  Such harm will continue if Defendant is not enjoined from further use.

## COUNT IV

*Infringement of U.S. Patent No. 8,342,325, under 35 U.S.C. § 271*

100.    Plaintiffs repeat and re-allege each and every allegation and exhibit of the foregoing paragraphs as though fully set forth herein.

101.    As its fourth claim for relief, Plaintiffs allege that Fellowes has infringed U.S. Patent No. 8,342,325, entitled "Housing for receiving and encasing an object" (the "'325 Patent"), which was duly and lawfully issued by the United States Patent and Trademark Office on January 1, 2013.  A true and correct copy of the '325 Patent is attached as **Exhibit A1**.

102.    The '325 Patent lists Gary Rayner, Andrew C. Crawford, and Alfred Blochlinger as inventors.

103.    The rights, title, and interest in the '325 Patent were assigned to TreeFrog Developments—the sole owner of the '325 Patent—and licensed to OtterBox.

104.    Plaintiffs have complied with the statutory notice provision of 35 U.S.C. § 287, including by physically marking its embodying products with an address of a posting on the Internet (www.lifeproof.com/ip), accessible to the public without charge, that associates Plaintiffs' embodying products with the number of the '325 Patent.

105.    By so marking the embodying products, Plaintiffs have provided Fellowes with constructive notice of the '325 Patent.

106.    By filing the Original Complaint (Dkt. 1) in this Action, Plaintiffs provided further actual notice of the '325 Patent and Fellowes' infringement thereof.

107.    Further, on information and belief based on the wholesale mimicry of embodying LifeProof brand products, Fellowes is, or has been, in physical possession of embodying LifeProof brand products, carefully examined same, and thereby received direct knowledge that the LifeProof brand products were patented by virtue of the physical marking.

108.    Further, counsel for Plaintiffs provided actual notice of the '325 Patent in a letter sent to Steven L. Carson, General Counsel of Defendant Fellowes, via FedEx on October 12, 2018. That letter was delivered on October 15, 2018, and directed Mr. Carson's attention to the '325 Patent, among others.

109.    Notwithstanding notice that the features and technologies of the LifeProof brand products were covered by numerous patents, Fellowes deliberately and willfully copied the embodying designs, which deliberate and willful copying, on information and belief, continues to this day unabated through the continued manufacture, use, distribution, offers for sale, and sale of the Blackweb Waterproof Phone Case products.

110.    By virtue of this deliberate conduct, Fellowes' infringement of the '325 Patent's teachings has been and continues to be willful, entitling Plaintiffs to enhanced damages.

111.    Fellowes has at no time been licensed to practice the teachings of the '325 Patent.

112.    Fellowes has infringed and continues to infringe one or more claims of the '325 Patent literally and/or under the doctrine of equivalents, through its manufacture, use, sale, importation, and/or offer to sale the Blackweb Waterproof Phone Case products.

113.    For example, the Blackweb Waterproof Phone Case products meet each and every limitation of at least claim 1 of the '325 Patent, as shown in **Exhibit A2.**

32

114.     Further, Fellows has contributorily infringed and induced infringement of the '325 Patent, and continues to do so, by offering to sell and selling the Blackweb Waterproof Phone Case products to Walmart, and through Walmart, to Fellowes' customers who directly infringe the '325 Patent through at least the use of the product.

115.     As set forth in Exhibit A2, the Blackweb Waterproof Phone Case products constitute a material part of at least claim 1 of the '325 Patent, which on information and belief Fellowes knows are especially made for use in infringement of at least claim 1 of the '325 Patent. The Blackweb Waterproof Phone Case products are not a staple article of commerce suitable for a substantial non-infringing use.

116.     Fellowes' historical and ongoing willful and deliberate conduct makes this an exceptional case where the trebling of damages and an award of fees under 35 U.S.C. §§ 284 and 285 is warranted.

117.     Plaintiffs have suffered and will continue to suffer damages from Fellowes' ongoing acts of infringement.

## COUNT V

*Infringement of U.S. Patent No. 8,393,466, under 35 U.S.C. § 271*

118.     Plaintiffs repeat and re-allege each and every allegation and exhibit of the foregoing paragraphs as though fully set forth herein.

119.     As its fifth claim for relief, Plaintiffs allege that Fellowes has infringed U.S. Patent No. 8,393,466, entitled "Housing for encasing an object" (the "'466 Patent"), which was duly and lawfully issued by the United States Patent and Trademark Office on March 12, 2013.  A true and correct copy of the '466 Patent is attached as **Exhibit B1**.

120.     The '466 Patent lists Gary Rayner, Andrew C. Crawford, and Alfred Blochlinger as inventors.

33

121.    The rights, title, and interest in the '466 Patent were assigned to TreeFrog Developments—the sole owner of the '466 Patent—and licensed to OtterBox.

122.    Plaintiffs have complied with the statutory notice provision of 35 U.S.C. § 287, including by physically marking the embodying products with an address of a posting on the Internet (www.lifeproof.com/ip), accessible to the public without charge, that associates Plaintiffs' embodying products with the number of the '466 Patent.

123.    By so marking the embodying products, Plaintiffs have provided Fellowes with constructive notice of the '466 Patent.

124.    By filing the Original Complaint in this Action, Plaintiffs provided further actual notice of the '466 Patent and Fellowes' infringement thereof.

125.    Further, on information and belief based on the wholesale mimicry of embodying LifeProof brand products, Fellowes is, or has been, in physical possession of embodying LifeProof brand products, carefully examined same, and thereby received direct knowledge that the LifeProof brand products were patented by virtue of the physical marking.

126.    Further, counsel for Plaintiffs provided actual notice of the '466 Patent in a letter sent to Steven L. Carson, General Counsel of Defendant Fellowes, via FedEx on October 12, 2018. That letter was delivered on October 15, 2018, and directed Mr. Carson's attention to the '466 Patent, among others.

127.    Notwithstanding notice that the features and technologies of the LifeProof brand products were covered by numerous patents, Fellowes deliberately and willfully copied the embodying designs, which deliberate and willful copying, on information and belief, continues to this day unabated through the continued manufacture, use, distribution, offers for sale, and sale of the Blackweb Waterproof Phone Case products.

34

128.    By virtue of this deliberate conduct, Fellowes' infringement of the '466 Patent's teachings has been and continues to be willful, entitling Plaintiffs to enhanced damages.

129.    Fellowes has at no time been licensed to practice the teachings of the '466 Patent.

130.    Fellowes has infringed and continues to infringe one or more claims of the '466 Patent literally and/or under the doctrine of equivalents, through its manufacture, use, sale, importation, and/or offer to sale the Blackweb Waterproof Phone Case products.

131.    For example, the Blackweb Waterproof Phone Case products meet each and every limitation of at least claim 1 of the '466 Patent, as shown in **Exhibit B2.**

132.    Further, Fellows has contributorily infringed and induced infringement of the '466 Patent, and continues to do so, by offering to sell and selling the Blackweb Waterproof Phone Case products to Walmart, and through Walmart, to Fellowes' customers who directly infringe the '466 Patent through at least the use of the product.

133.    As set forth in Exhibit B2, the Blackweb Waterproof Phone Case products constitute a material part of at least claim 1 of the '466 Patent, which on information and belief Fellowes knows are especially made for use in infringement of at least claim 1 of the '466 Patent. The Blackweb Waterproof Phone Case products are not a staple article of commerce suitable for a substantial non-infringing use.

134.    Fellowes' historical and ongoing willful and deliberate conduct makes this an exceptional case where the trebling of damages and an award of fees under 35 U.S.C. §§ 284 and 285 is warranted.

135.    Plaintiffs have suffered and will continue to suffer damages from Fellowes' ongoing acts of infringement.

## COUNT VI

*Infringement of U.S. Patent No. 8,526,180, under 35 U.S.C. § 271*

136.     Plaintiffs repeat and re-allege each and every allegation and exhibit of the foregoing paragraphs as though fully set forth herein.

137.     As its sixth claim for relief, Plaintiffs allege that Fellowes has infringed U.S. Patent No. 8,526,180, entitled "Housing for encasing an object having an electrical connection" (the "'180 Patent"), which was duly and lawfully issued by the United States Patent and Trademark Office on September 3, 2013.  A true and correct copy of the '180 Patent is attached as **Exhibit C1**.

138.     The '180 Patent lists Gary Rayner as inventor.

139.     The rights, title, and interest in the '180 Patent were assigned to TreeFrog Developments—the sole owner of the '180 Patent—and licensed to OtterBox.

140.     Plaintiffs have complied with the statutory notice provision of 35 U.S.C. § 287, including by physically marking the embodying products with an address of a posting on the Internet (www.lifeproof.com/ip), accessible to the public without charge, that associates Plaintiffs' embodying products with the number of the '180 Patent.

141.     By so marking the embodying products, Plaintiffs have provided Fellowes with constructive notice of the '180 Patent.

142.     By filing the Original Complaint in this Action, Plaintiffs provided further actual notice of the '180 Patent and Fellowes' infringement thereof.

143.     Further, on information and belief based on the wholesale mimicry of embodying LifeProof brand products, Fellowes is, or has been, in physical possession of embodying LifeProof brand products, carefully examined same, and thereby received direct knowledge that the LifeProof brand products were patented by virtue of the physical marking.

36

144. Further, counsel for Plaintiffs provided actual notice of the '180 Patent in a letter sent to Steven L. Carson, General Counsel of Defendant Fellowes, via FedEx on October 12, 2018. That letter was delivered on October 15, 2018, and directed Mr. Carson's attention to the '180 Patent, among others.

145. Notwithstanding notice that the features and technologies of the LifeProof brand products were covered by numerous patents, Fellowes deliberately and willfully copied the embodying designs, which deliberate and willful copying, on information and belief, continues to this day unabated through the continued manufacture, use, distribution, offers for sale, and sale of the Blackweb Waterproof Phone Case products.

146. By virtue of this deliberate conduct, Fellowes' infringement of the '180 Patent's teachings has been and continues to be willful, entitling Plaintiffs to enhanced damages.

147. Fellowes has at no time been licensed to practice the teachings of the '180 Patent.

148. Fellowes has infringed and continues to infringe one or more claims of the '180 Patent literally and/or under the doctrine of equivalents, through its manufacture, use, sale, importation, and/or offer to sale the Blackweb Waterproof Phone Case products.

149. For example, the Blackweb Waterproof Phone Case products meet each and every limitation of at least claim 1 of the '180 Patent, as shown in **Exhibit C2.**

150. Further, Fellows has contributorily infringed and induced infringement of the '180 Patent, and continues to do so, by offering to sell and selling the Blackweb Waterproof Phone Case products to Walmart, and through Walmart, to Fellowes' customers who directly infringe the '180 Patent through at least the use of the product.

151. As set forth in Exhibit C2, the Blackweb Waterproof Phone Case products constitute a material part of at least claim 1 of the '180 Patent, which on information and belief

Fellowes knows are especially made for use in infringement of at least claim 1 of the '180 Patent. The Blackweb Waterproof Phone Case products are not a staple article of commerce suitable for a substantial non-infringing use.

152.    Fellowes' historical and ongoing willful and deliberate conduct makes this an exceptional case where the trebling of damages and an award of fees under 35 U.S.C. §§ 284 and 285 is warranted.

153.    Plaintiffs have suffered and will continue to suffer damages from Fellowes' ongoing acts of infringement.

### COUNT VII

*Infringement of U.S. Patent No. 8,531,834, under 35 U.S.C. § 271*

154.    Plaintiffs repeat and re-allege each and every allegation and exhibit of the foregoing paragraphs as though fully set forth herein.

155.    As its seventh claim for relief, Plaintiffs allege that Fellowes has infringed U.S. Patent No. 8,531,834, entitled "Housing for encasing a tablet computer" (the "'834 Patent"), which was duly and lawfully issued by the United States Patent and Trademark Office on September 10, 2013.  A true and correct copy of the '834 Patent is attached as **Exhibit D1**.

156.    The '834 Patent lists Gary Rayner, Andrew C. Crawford, and Alfred Blochlinger as inventors.

157.    The rights, title, and interest in the '834 Patent were assigned to TreeFrog Developments—the sole owner of the '834 Patent—and licensed to OtterBox.

158.    Plaintiffs have complied with the statutory notice provision of 35 U.S.C. § 287, including by physically marking the embodying products with an address of a posting on the Internet (www.lifeproof.com/ip), accessible to the public without charge, that associates Plaintiffs' embodying products with the number of the '834 Patent.

159. By so marking the embodying products, Plaintiffs have provided Fellowes with constructive notice of the '834 Patent.

160. By filing the Original Complaint in this Action, Plaintiffs provided further actual notice of the '834 Patent and Fellowes' infringement thereof.

161. Further, on information and belief based on the wholesale mimicry of embodying LifeProof brand products, Fellowes is, or has been, in physical possession of embodying LifeProof brand products, carefully examined same, and thereby received direct knowledge that the LifeProof brand products were patented by virtue of the physical marking.

162. Notwithstanding notice that the features and technologies of the LifeProof brand products were covered by numerous patents, Fellowes deliberately and willfully copied the embodying designs, which deliberate and willful copying, on information and belief, continues to this day unabated through the continued manufacture, use, distribution, offers for sale, and sale of the Blackweb Waterproof Phone Case products.

163. By virtue of this deliberate conduct, Fellowes' infringement of the '834 Patent's teachings has been and continues to be willful, entitling Plaintiffs to enhanced damages.

164. Fellowes has at no time been licensed to practice the teachings of the '834 Patent.

165. Fellowes has infringed and continues to infringe one or more claims of the '834 Patent literally and/or under the doctrine of equivalents, through its manufacture, use, sale, importation, and/or offer to sale the Blackweb Waterproof Phone Case products.

166. For example, the Blackweb Waterproof Phone Case products meet each and every limitation of at least claim 28 of the '834 Patent, as shown in **Exhibit D2.**

167. Further, Fellows has contributorily infringed and induced infringement of the '834 Patent, and continues to do so, by offering to sell and selling the Blackweb Waterproof Phone Case

products to Walmart, and through Walmart, to Fellowes' customers who directly infringe the '834 Patent through at least the use of the product.

168.     As set forth in Exhibit D2, the Blackweb Waterproof Phone Case products constitute a material part of at least claim 28 of the '834 Patent, which on information and belief Fellowes knows are especially made for use in infringement of at least claim 28 of the '834 Patent. The Blackweb Waterproof Phone Case products are not a staple article of commerce suitable for a substantial non-infringing use.

169.     Fellowes' historical and ongoing willful and deliberate conduct makes this an exceptional case where the trebling of damages and an award of fees under 35 U.S.C. §§ 284 and 285 is warranted.

170.     Plaintiffs have suffered and will continue to suffer damages from Fellowes' ongoing acts of infringement.

## COUNT VIII

*Infringement of U.S. Patent No. 8,564,950, under 35 U.S.C. § 271*

171.     Plaintiffs repeat and re-allege each and every allegation and exhibit of the foregoing paragraphs as though fully set forth herein.

172.     As its eighth claim for relief, Plaintiffs allege that Fellowes has infringed U.S. Patent No. 8,564,950, entitled "Housing encasing a device having a switch" (the "'950 Patent"), which was duly and lawfully issued by the United States Patent and Trademark Office on October 22, 2013.  A true and correct copy of the '950 Patent is attached as **Exhibit E1**.

173.     The '950 Patent lists Gary Rayner, Andrew C. Crawford, Alfred Blochlinger, and Gareth F. Watt as inventors.

174.     The rights, title, and interest in the '950 Patent were assigned to TreeFrog Developments—the sole owner of the '950 Patent—and licensed to OtterBox.

40

175.    Plaintiffs have complied with the statutory notice provision of 35 U.S.C. § 287, including by physically marking the embodying products with an address of a posting on the Internet (www.lifeproof.com/ip), accessible to the public without charge, that associates Plaintiffs' embodying products with the number of the '950 Patent.

176.    By so marking the embodying products, Plaintiffs have provided Fellowes with constructive notice of the '950 Patent.

177.    By filing the Original Complaint in this Action, Plaintiffs provided further actual notice of the '950 Patent and Fellowes' infringement thereof.

178.    Further, on information and belief based on the wholesale mimicry of embodying LifeProof brand products, Fellowes is, or has been, in physical possession of embodying LifeProof brand products, carefully examined same, and thereby received direct knowledge that the LifeProof brand products were patented by virtue of the physical marking.

179.    Further, counsel for Plaintiffs provided actual notice of the '950 Patent in a letter sent to Steven L. Carson, General Counsel of Defendant Fellowes, via FedEx on October 12, 2018. That letter was delivered on October 15, 2018, and directed Mr. Carson's attention to the '950 Patent, among others.

180.    Notwithstanding notice that the features and technologies of the LifeProof brand products were covered by numerous patents, Fellowes deliberately and willfully copied the embodying designs, which deliberate and willful copying,   on information and belief, continues to this day unabated through the continued manufacture, use, distribution, offers for sale, and sale of the Blackweb Waterproof Phone Case products.

181.    By virtue of this deliberate conduct, Fellowes' infringement of the '950 Patent's teachings has been and continues to be willful, entitling Plaintiffs to enhanced damages.

182.     Fellowes has at no time been licensed to practice the teachings of the '950 Patent.

183.     Fellowes has infringed and continues to infringe one or more claims of the '950 Patent literally and/or under the doctrine of equivalents, through its manufacture, use, sale, importation, and/or offer to sale the Blackweb Waterproof Phone Case for Apple iPhone products.

184.     For example, the Blackweb Waterproof Phone Case for Apple iPhone products meet each and every limitation of at least claim 17 of the '950 Patent, as shown in **Exhibit E2.**

185.     Further, Fellows has contributorily infringed and induced infringement of the '950 Patent, and continues to do so, by offering to sell and selling the Blackweb Waterproof Phone Case for Apple iPhone products to Walmart, and through Walmart, to Fellowes' customers who directly infringe the '950 Patent through at least the use of the product.

186.     As set forth in Exhibit E2, the Blackweb Waterproof Phone Case for Apple iPhone products constitutes a material part of at least claim 17 of the '950 Patent, which on information and belief Fellowes knows are especially made for use in infringement of at least claim 17 of the '950 Patent.  The Blackweb Waterproof Phone Case for Apple iPhone products are not a staple article of commerce suitable for a substantial non-infringing use.

187.     Fellowes' historical and ongoing willful and deliberate conduct makes this an exceptional case where the trebling of damages and an award of fees under 35 U.S.C. §§ 284 and 285 is warranted.

188.     Plaintiffs have suffered and will continue to suffer damages from Fellowes' ongoing acts of infringement.

## COUNT IX

*Infringement of U.S. Patent No. 9,549,598, under 35 U.S.C. § 271*

189.     Plaintiffs repeat and re-allege each and every allegation and exhibit of the foregoing paragraphs as though fully set forth herein.

42

190.    As its ninth claim for relief, Plaintiffs allege that Fellowes has infringed U.S. Patent No. 9,549,598, entitled "Housing for encasing an electronic device" (the "'598 Patent"), which was duly and lawfully issued by the United States Patent and Trademark Office on January 24, 2017.  A true and correct copy of the '598 Patent is attached as **Exhibit F1**.

191.    The '598 Patent lists Gary Rayner, Andrew C. Crawford, and Alfred Blochlinger as inventors.

192.    The rights, title, and interest in the '598 Patent were assigned to TreeFrog Developments—the sole owner of the '598 Patent—and licensed to OtterBox.

193.    Plaintiffs have complied with the statutory notice provision of 35 U.S.C. § 287, including by physically marking the embodying products with an address of a posting on the Internet ([www.lifeproof.com/ip](www.lifeproof.com/ip)), accessible to the public without charge, that associates Plaintiffs' embodying products with the number of the '598 Patent.

194.    By so marking the embodying products, Plaintiffs have provided Fellowes with constructive notice of the '598 Patent.

195.    By filing the Original Complaint in this Action, Plaintiffs provided further actual notice of the '598 Patent and Fellowes' infringement thereof.

196.    Further, on information and belief based on the wholesale mimicry of embodying LifeProof brand products, Fellowes is, or has been, in physical possession of embodying LifeProof brand products, carefully examined same, and thereby received direct knowledge that the LifeProof brand products were patented by virtue of the physical marking.

197.    Notwithstanding notice that the features and technologies of the LifeProof brand products were covered by numerous patents, Fellowes deliberately and willfully copied the embodying designs, which deliberate and willful copying, on information and belief, continues to

43

this day unabated through the continued manufacture, use, distribution, offers for sale, and sale of the Blackweb Waterproof Phone Case products.

198.     By virtue of this deliberate conduct, Fellowes' infringement of the '598 Patent's teachings has been and continues to be willful, entitling Plaintiffs to enhanced damages.

199.     Fellowes has at no time been licensed to practice the teachings of the '598 Patent.

200.     Fellowes has infringed and continues to infringe one or more claims of the '598 Patent literally and/or under the doctrine of equivalents, through its manufacture, use, sale, importation, and/or offer to sale the Blackweb Waterproof Phone Case products.

201.     For example, the Blackweb Waterproof Phone Case products meet each and every limitation of at least claim 17 of the '598 Patent, as shown in **Exhibit F2.**

202.     Further, Fellows has contributorily infringed and induced infringement of the '598 Patent, and continues to do so, by offering to sell and selling the Blackweb Waterproof Phone Case products to Walmart, and through Walmart, to Fellowes' customers who directly infringe the '598 Patent through at least the use of the product.

203.     As set forth in Exhibit F2, the Blackweb Waterproof Phone Case products constitute a material part of at least claim 17 of the '598 Patent, which on information and belief Fellowes knows are especially made for use in infringement of at least claim 17 of the '598 Patent. The Blackweb Waterproof Phone Case products are not a staple article of commerce suitable for a substantial non-infringing use.

204.     Fellowes' historical and ongoing willful and deliberate conduct makes this an exceptional case where the trebling of damages and an award of fees under 35 U.S.C. §§ 284 and 285 is warranted.

205.    Plaintiffs have suffered and will continue to suffer damages from Fellowes' ongoing acts of infringement.

## COUNT X

*Infringement of U.S. Patent No. 9,660,684, under 35 U.S.C. § 271*

206.    Plaintiffs repeat and re-allege each and every allegation and exhibit of the foregoing paragraphs as though fully set forth herein.

207.    As its tenth claim for relief, Plaintiffs allege that Fellowes has infringed U.S. Patent No. 9,660,684, entitled "Housing for encasing a mobile computing device " (the "'684 Patent"), which was duly and lawfully issued by the United States Patent and Trademark Office on May 23, 2017.  A true and correct copy of the '684 Patent is attached as **Exhibit G1**.

208.    The '684 Patent lists Gary Rayner as inventor.

209.    The rights, title, and interest in the '684 Patent were assigned to TreeFrog Developments—the sole owner of the '684 Patent—and licensed to OtterBox.

210.    Plaintiffs have complied with the statutory notice provision of 35 U.S.C. § 287.

211.    By filing the Original Complaint in this Action, Plaintiffs provided actual notice of the '684 Patent and Fellowes' infringement thereof.

212.    Notwithstanding notice that the features and technologies of the '684 Patent are patented, Fellowes deliberately and willfully copied the embodying designs, which deliberate and willful infringement, on information and belief, continues to this day unabated through the continued manufacture, use, distribution, offers for sale, and sale of the Blackweb Waterproof Phone Case products.

213.    By virtue of this deliberate conduct, Fellowes' infringement of the '684 Patent's teachings has been and continues to be willful, entitling Plaintiffs to enhanced damages.

214.    Fellowes has at no time been licensed to practice the teachings of the '684 Patent.

215.    Fellowes has infringed and continues to infringe one or more claims of the '684 Patent literally and/or under the doctrine of equivalents, through its manufacture, use, sale, importation, and/or offer to sale the Blackweb Waterproof Phone Case for Apple iPhone products.

216.    For example, the Blackweb Waterproof Phone Case for Apple iPhone products meet each and every limitation of at least claim 8 of the '684 Patent, as shown in **Exhibit G2.**

217.    Further, Fellows has contributorily infringed and induced infringement of the '684 Patent, and continues to do so, by offering to sell and selling the Blackweb Waterproof Phone Case for Apple iPhone products to Walmart, and through Walmart, to Fellowes' customers who directly infringe the '684 Patent through at least the use of the product.

218.    As set forth in Exhibit G2, the Blackweb Waterproof Phone Case for Apple iPhone products constitute a material part of at least claim 8 of the '684 Patent, which on information and belief Fellowes knows are especially made for use in infringement of at least claim 15 of the '684 Patent.  The Blackweb Waterproof Phone Case for Apple iPhone products are not a staple article of commerce suitable for a substantial non-infringing use.

219.    Fellowes' historical and ongoing willful and deliberate conduct makes this an exceptional case where the trebling of damages and an award of fees under 35 U.S.C. §§ 284 and 285 is warranted.

220.    Plaintiffs have suffered and will continue to suffer damages from Fellowes' ongoing acts of infringement.

## <u>COUNT XI</u>

*Infringement of U.S. Patent No. 9,498,033, under 35 U.S.C. § 271*

221.    Plaintiffs repeat and re-allege each and every allegation and exhibit of the foregoing paragraphs as though fully set forth herein.

222. As its eleventh claim for relief, Plaintiffs allege that Fellowes has infringed U.S. Patent No. 9,498,033, entitled "Protective enclosure for an electronic device" (the "'033 Patent"), which was duly and lawfully issued by the United States Patent and Trademark Office on November 22, 2016. A true and correct copy of the '033 Patent is attached as **Exhibit H1**.

223. The '033 Patent lists Curtis Richardson, Alan V. Morine, Brian P. Thomas, Jamie L. Johnson, and Jason M. Thompson as inventors.

224. The rights, title, and interest in the '033 Patent were assigned to OtterBox, which is the sole owner of the '033 Patent.

225. Plaintiffs have complied with the statutory notice provision of 35 U.S.C. § 287, including by physically marking the embodying products with an address of a posting on the Internet (www.otterbox.com/ip), accessible to the public without charge, that associates Plaintiffs' embodying products with the number of the '033 Patent.

226. By so marking the embodying products, Plaintiffs have provided Fellowes with constructive notice of the '033 Patent.

227. By filing the Original Complaint in this Action, Plaintiffs provided further actual notice of the '033 Patent and Fellowes' infringement thereof.

228. Notwithstanding notice that the features and technologies of the OtterBox products were covered by numerous patents, Fellowes deliberately and willfully copied the embodying designs, which deliberate and willful copying, on information and belief, continues to this day unabated.

229. By virtue of this deliberate conduct, Fellowes' infringement of the '033 Patent's teachings has been and continues to be willful, entitling Plaintiffs to enhanced damages.

230. Fellowes has at no time been licensed to practice the teachings of the '033 Patent.

231. Fellowes offers Blackweb Rugged Phone Case products for at least the Apple iPhone 6/6S/7/8, the Apple iPhone 6+/7+/8+, the Apple iPhone X/Xs, the Apple iPhone XR, the Apple iPhone Xs Max, the Apple iPhone 11, the Samsung Galaxy S10, the Samsung Galaxy S10+, and the Samsung Galaxy S10E (collectively, the "Blackweb Rugged Phone Case products"), including color variants for each.

232. On information and belief, Fellowes designs, manufactures, uses, imports, and offers for sale, and sells for distribution through Walmart's online and brick-and-mortar stores nationwide, the Blackweb Rugged Phone Case products.

233. Fellowes has infringed and continues to infringe one or more claims of the '033 Patent literally and/or under the doctrine of equivalents, through its manufacture, use, sale, importation, and/or offer to sale the Blackweb Rugged Phone Case products.

234. For example, the Blackweb Rugged Phone Case products meet each and every limitation of at least claim 1 of the '033 Patent, as shown in **Exhibit H2.**

235. Further, Fellows has contributorily infringed and induced infringement of the '033 Patent, and continues to do so, by offering to sell and selling the Blackweb Rugged Phone Case products to Walmart, and through Walmart, to Fellowes' customers who directly infringe the '033 Patent through at least the use of the product.

236. As set forth in Exhibit H2, the Blackweb Rugged Phone Case products constitute a material part of at least claim 1 of the '033 Patent, which on information and belief Fellowes knows are especially made for use in infringement of at least claim 1 of the '033 Patent. The Blackweb Rugged Phone Case products are not a staple article of commerce suitable for a substantial non-infringing use.

237. Fellowes' historical and ongoing willful and deliberate conduct makes this an exceptional case where the trebling of damages and an award of fees under 35 U.S.C. §§ 284 and 285 is warranted.

238. Plaintiffs have suffered and will continue to suffer damages from Fellowes' ongoing acts of infringement.

239. Plaintiffs have suffered and will continue to suffer damages from Fellowes' ongoing acts of infringement.

## COUNT XII

*Illinois Uniform Deceptive Trade Practices Act,* 815 ILCS 510/1 *et seq.*

240. Plaintiffs repeat and re-allege each and every allegation and exhibit of the foregoing paragraphs as though fully set forth herein.

241. As its twelfth claim for relief, Plaintiffs allege unfair and deceptive acts in violation of the Illinois Uniform Deceptive Trade Practices Act, codified at 815 ILCS 510/1 *et seq.*

242. Plaintiffs and Fellowes are competitors in the protective case market. This competition is demonstrated by, at least, the presentation of the accused products alongside and in-between Plaintiffs' respective products:



243. As detailed above, Fellowes has willfully and deliberately designed its Blackweb Waterproof Phone Case products in a way likely to cause and that, on information and belief, actually has caused confusion in and misunderstanding for consumers as to the affiliation, source, sponsorship, approval, certification, connection, or authorization of the subject products sold in the State of Illinois by Fellowes.

244. Fellowes' actions constitute unfair and deceptive acts and practices in the conduct of business, trade, or commerce, in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*.

245. The consuming public is likely to be and, on information and belief has been, damaged as a result of Fellowes' deceptive trade practices.

246. As detailed above, the wholesale mimicry by Fellowes of products authorized to use the LIFEPROOF Trade Dress and design language has been willful and deliberate. This conduct has caused, and will continue to cause, Plaintiffs irreparable injury and damages for which there is no adequate remedy at law.

## COUNT XIII

*Unfair Competition Under the Common Law of the State of Illinois*

247.    Plaintiffs repeat and re-allege each and every allegation and exhibit of the foregoing paragraphs as though fully set forth herein.

248.    As its thirteenth claim for relief, Plaintiffs allege unfair competition under the common law of the State of Illinois.

249.    Through the sale of the Blackweb Waterproof Phone Case products, Fellowes has engaged in unfair competition under the common law of the State of Illinois.

250.    As detailed above, Fellowes has sought to mislead consumers, by creating a likelihood that the relevant market for consumers of protective cases is likely to believe that the Blackweb Waterproof Phone Case products were designed, manufactured, sold, or otherwise authorized by Plaintiffs.

251.    Fellowes' actions have damaged and will continue to damage Plaintiffs irreparably, for which injury and damages Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following relief:

A.    That judgment be entered in favor of Plaintiffs and against Fellowes on each Count of the Complaint;

B.    That the Court order that Fellowes, along with its officers, agents, directors, employees, representatives, successors, assigns, and any persons, organizations, firms, or corporations in concert or participation with Fellowes, be permanently enjoined from:

    a.    Manufacturing, using, selling, offering to sell, importing, or marketing any products that embody or incorporate protectable elements of the LIFEPROOF Trade Dress, or any other trade dress or product configuration

that is confusingly similar to the LIFEPROOF Trade Dress or LifeProof brand products;

b. Diluting or infringing Plaintiffs' LIFEPROOF Trade Dress rights, eroding the distinctiveness of the LIFEPROOF Trade Dress, and damaging Plaintiffs' goodwill, reputation, and business;

c. Engaging in deceptive trade practices relating to Plaintiff's LIFEPROOF Trade Dress;

d. Otherwise competing unfairly with Plaintiffs in any manner;

e. Infringing any claim of the '325, '466, '180, '834, '950, '598, '684, and/or '033 Patents (collectively, the "Patents-in-Suit");

C. That Fellowes be ordered to prepare and distribute to its customer and the general public corrective statements disclaiming any association between Plaintiffs or LifeProof brand products and Fellowes' Blackweb Waterproof Phone Case products;

D. That Fellowes be required to destroy or surrender for destruction any remaining inventory of the Blackweb Waterproof Phone Case products, along with any similar products or materials in its possession or control that violates Plaintiffs' rights in the LIFEPROOF Trade Dress, and to recall and make reasonable efforts to obtain the return of any infringing and/or confusingly similar products from its customers, including Walmart;

E. That Plaintiffs be awarded damages in an amount to be fixed by the Court for Fellowes' acts of trade dress infringement and unfair competition, Illinois State Statutory deceptive trade practices, and common law unfair competition, including:

a. Actual damages in an amount sufficient to compensate Plaintiffs for their injuries, including for any lost profits for lost sales of LifeProof brand products, and an amount sufficient to compensate Plaintiffs for any and all damage caused by Fellowes' unlawful acts, including Plaintiffs' loss of goodwill and injury to reputation, such damages to be trebled;

b. A reasonable royalty for Fellowes' acts of trade dress infringement, such amount to be trebled;

c. An accounting and disgorgement of all profits, gains, and advantages received by Fellowes from sales and revenues made as a result of its acts, such amount to be trebled;

d. Punitive damages for Fellowes' willful and malicious acts of common law unfair competition and Illinois statutory deceptive trade practices;

F. That Plaintiffs be awarded damages adequate to compensate Plaintiffs for Fellowes' act of infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, such amount to be trebled based on Fellowes' willful infringement, pursuant to 35 U.S.C. § 284;

G. That this case be found exceptional based on Fellowes' deliberate infringing actions and disregard for Plaintiff's rights in the LIFEPROOF Trade Dress, and that this Court award Plaintiffs' all reasonable attorneys' fees, costs, and disbursements incurred as a result of this Action, pursuant to 15 U.S.C. § 1117;

H. That this case be found exceptional based on Fellowes' deliberate infringing actions and disregard for Plaintiff's patent rights, and that this Court award Plaintiffs' attorneys' fees, pursuant to 35 U.S.C. § 285;

I.   Plaintiffs' costs of this Action; and

J.   Such other and further relief deemed just by this Court.


Dated:  July 17, 2020.

Respectfully submitted,


By: _/s/ James W. Beard_____
**MERCHANT & GOULD P.C.**
James W. Beard (*admitted pro hac vice*)
1801 California Street
Suite 3300
Denver, Colorado 80202
(303) 357-1670 (Telephone)
(612) 332-9081 (Facsimile)
jbeard@merchantgould.com

Heather Kliebenstein (*admitted pro hac vice*)
3200 IDS Center
80 South 8th Street
Minneapolis, MN 55402
(612) 371-5213
hkliebenstein@merchantgould.com

**IRWIN IP LLC**
Reid P. Huefner
Margaret A. Herrmann
222 South Riverside Plaza
Suite 2350
Chicago, IL 60606
(312) 667-6080 (Telephone)
rhuefner@irwinip.com
mherrmann@irwinip.com

*Attorneys for Plaintiffs*